**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HUNTER HARRIS and ) | |
| CORA CLUETT, ) | |
| **Plaintiffs** ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | |
| UNIVERSITY OF MASSACHUSETTS ) | |
| LOWELL, JACQUELINE MOLONEY, ) | |
| UNIVERSITY OF MASSACHUSETTS ) | |
| BOSTON, MARCELO SUÁREZ- ) | |
| OROZCO and SHAWN DE VEAU ) | |
| **Defendants** ) | |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**PARTIES**

1. Plaintiff, Hunter Harris, lives in Medway, Massachusetts and is a student at the University of Massachusetts in Lowell.

2. Plaintiff, Cora Cluett, lives in Quincy, Massachusetts and is a student at the University of Massachusetts in Boston.

3. Defendant, University of Massachusetts Lowell ("Lowell"), is a public university within the University of Massachusetts system located in Lowell, Massachusetts.

4. Defendant, Jacqueline Moloney, is the Chancellor of University of Massachusetts, Lowell.

5. Defendant, University of Massachusetts Boston ("Boston"), is a public university within the University of Massachusetts system located in Boston,

1

Massachusetts.

6. Defendant, Marcelo Suárez-Orozco, is the Chancellor of the University of Massachusetts, Boston.

7. Defendant, Shawn De Veau, is the Interim Vice Chancellor for Student Affairs for the University of Massachusetts, Boston.

## JURISDICTION, VENUE AND STANDING

8. Plaintiffs bring this action under 28 U.S.C. § 2201 and § 2202.

9. Plaintiffs' claims, surrounding defendants' vaccination policies, assert violations of federal and state law and the United States Constitution.

## UMASS LOWELL POLICY

10. On April 28, 2021, defendants Lowell and Moloney issued a statement through UMass Lowell's Provost and Vice Chancellor for Academic and Student Affairs, that UMass Lowell would require all of its students to be fully vaccinated against COVID-19 in order to "live, learn or visit any UMass Lowell campus or property[1]."

11. The policy stated that defendant Lowell would "accommodate medical, disability and religious exemptions consistent with state and federal laws," similar to their other vaccination requirements.

12. Faculty and Staff are not required to be vaccinated against COVID-19. *Id.*

---

[1] https://www.uml.edu/alert/coronavirus/4-27-21-student-vaccine-requirement.aspx

13. Defendant Moloney implemented and continues to implement this policy for newly admitted and current students of the University of Massachusetts, Lowell.

## UMASS BOSTON POLICY

14. On April 26, 2021, defendants Boston and Suárez-Orozco, through Marie Bowen, Vice Chancellor for Human Resources, Gail DiSabatino, Vice Chancellor for Student Affairs and Robert Pomales, Executive Director of University Health Services, issued a statement that UMass Boston "will require vaccinations for all UMass Boston students who are coming to campus, or physically accessing campus resources for the fall semester, and wish to live, learn and/or conduct research on campus…[2]"

15. Similar to defendant Lowell, Boston's policy was subject to medical, disability and religious exemptions.

16. Similar to defendant Lowell, Boston's faculty was not required to be vaccinated.

17. Defendant Suárez-Orozco implemented and continues to implement this policy for newly admitted and current students of the University of Massachusetts, Boston.

---

[2] https://www.umb.edu/news/detail/an_update_on_vaccinations_for_the_umass_boston_community

## FEDERAL AND STATE GUIDANCE

18. To date, the federal government has not, nor has any state, mandated COVID-19 vaccination for its citizens.

19. The Department of Public Health has not mandated COVID-19 vaccination as a requirement for schooling within the Commonwealth of Massachusetts.

20. Currently, three vaccines are authorized by the Food and Drug Administration for emergency use only.

21. Under the Emergency Use Authorization statute, 21 U.S.C. § 360bbb-3, any drug authorized for emergency use by the Secretary of Health and Human Services must be administered only after recipients provide their voluntary and informed consent.

22. The HHS Secretary is to ensure:

**(ii)** Appropriate conditions designed to ensure that individuals to whom the product is administered are informed--

**(I)** that the Secretary has authorized the emergency use of the product;

**(II)** of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and
**(III)** of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

23. On March 27, 2020, Amanda Cohn, the Executive Secretary of CDC Advisory Committee on Immunization Practices (CDC-ACIP) specifically stated: "I just wanted to add that, just wanted to remind everybody, that under an Emergency Use Authorization, an EUA, vaccines are not allowed to be

mandatory. So, early in this vaccination phase, individuals will have to be consented and they won't be able to be mandated."[3]

24. Defendant Lowell agreed with this interpretation, as it posted that "no one can be required to take a vaccine under an EUA" on its own website, available in April 2021, just prior to enacting its mandate:



25. The statute therefore precludes mandating of a drug that is authorized for emergency use, as it deals specifically with health and medical consequences, and cannot be interpreted as dealing with sanctions and loss of privileges from school for lack of consent.

---

[3] https://www.thedesertreview.com/health/experimental-covid-shots-cannot-be-mandated/article_89b901ae-8126-11eb-a78d-07c0c7e926df.html

26. As a reference in federal employment context, "The Safer Federal Workforce Task Force," was created and is led by the White House COVID-19 response team, General Services Administration (GSA), Office of Personnel Management (OPM), and includes members from the Centers for Disease Control and Prevention (CDC), Department of Veteran's Affairs (VA), Federal Emergency Management Agency (FEMA), Office of Management and Budget (OMB) and the United States Secret Service (USSS).

27. The Safer Federal Workforce specifically stated, prior to July 30, 2021, that the vaccine should ***not*** be mandated for federal employees[4]:

## Vaccinations

**NEW Vaccination Status**

**Q: Should agencies require employees to be vaccinated or inquire regarding their vaccination status?**

A: The Administration strongly encourages all Americans, including Federal employees and contractors, to be vaccinated. Employees should receive paid time off to be vaccinated and to deal with any side effects. At present, COVID-19 vaccination should generally not be a pre-condition for employees or contractors at executive departments and agencies (agencies) to work in-person in Federal buildings, on Federal lands, and in other settings as required by their job duties.

Federal employees and contractors may voluntarily share information about their vaccination status, but agencies should not require federal employees or contractors to disclose such information. Responding to agency inquiries should be voluntary, and agencies should comply with any applicable laws, including requirements under the Privacy Act and the Paperwork Reduction Act, and any applicable collective bargaining obligations. When an employee or contractor voluntarily discloses that they are unvaccinated or declines to provide vaccination information, agencies should use that information to implement CDC-recommended mitigation measures, including masking and physical distancing.

---

[4] This specific Q & A has since been removed from the page and has not been replaced with affirmative guidance with respect to mandating vaccines:
https://www.saferfederalworkforce.gov/faq/vaccinations/

28. The EEO defers federal employers to the Safer Federal Workforce Task force and seems to *suggest* that a private employer could potentially mandate the vaccine[5], stating only that the EEO laws in and of themselves do not prevent employers from doing so.

29. The CDC encourages individuals who are not vaccinated to get vaccinated[6] but clearly states that the federal government does not mandate the vaccine.



30. The clearest guidance comes directly from the White House, in which President Biden has invited "colleges and universities across the country to join us in our efforts to end the pandemic by signing up for the COVID-19 College Vaccine Challenge."

31. The defendants are part of this challenge.[7]

32. The College Vaccine Challenge involves a commitment to colleges and universities to take three key actions to get their respective campuses fully vaccinated. The three key actions are: engaging every student, faculty and staff

---

[5] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws specifically "***The federal EEO laws do not prevent*** an employer from requiring all employees physically entering the workplace be vaccinated for COVID-19…"
[6] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html
[7] https://www.whitehouse.gov/COVIDCollegeChallenge/

member; organizing their college communities; and delivering vaccine access for all.

33. The challenge in no way encourages a vaccine mandate for students, but instead is geared toward creating programs to encourage the student body, faculty and staff to obtain the vaccine.

34. President Biden, as recently as July 29, 2021, issued a statement that all federal civilian workers must get vaccinated *or face regular testing*, resulting in a policy that in no way mandates the vaccine, and still offers unvaccinated individuals an option to remain unvaccinated[8].

35. The Commonwealth of Massachusetts mandates only that college students be immunized against Diptheria, Pertussis and Tetanus ("Tdap" vaccine), Measles, Mumps and Rubella ("MMR vaccine"), Varicella and Meningococcus[9].

36. No Board of Health, under G. L. c. 111 § 181, has required and/or forced vaccinations of the COVID-19 vaccine on their city/town.

37. The Governor of Massachusetts is opposed to mandating the COVID-19 vaccine for public employees[10].

38. Defendants' employees are not mandated to be vaccinated against COVID-19.

---

[8] https://www.reuters.com/world/us/biden-ask-federal-workers-thursday-get-vaccinated-or-face-testing-source-2021-07-29/
[9] https://www.mass.gov/doc/immunization-requirements-for-school-entry-0/download
[10] https://www.boston.com/news/politics/2021/05/04/massachusetts-vaccine-mandate-public-employees/ quoting Governor Baker: "The idea that I would kick somebody out of a job — especially in a kind of economy we have now — because, quote unquote, they wouldn't get vaccinated right away on an [Emergency Use Authorization]-approved vaccine… No, I'm not gonna play that game."

## COUNT I
## (14th Amendment Procedural Due Process)

39. Plaintiffs repeat and reallege paragraphs 1-38 of this Complaint.

40. Plaintiffs have a liberty interest in continuing their education at their respective universities. See *Goss* v. *Lopez*, 419 S.Ct. 565 (1975).

41. Plaintiffs are both returning students at their respective campuses, having been attending their respective schools for at least a full year prior to the start of the Fall 2021 semester (plaintiff Harris is an incoming Junior and plaintiff Cluett is an incoming Senior).

42. By failing to obtain a vaccine, students face expulsion from their university.

43. Defendant Boston has denied plaintiff Cluett a properly asserted religious exemption.

44. Plaintiff Harris is not eligible for a religious exemption, nor a medical exemption, and has not been afforded the option of paying a nominal penalty, such as is outlined in G. L. c. 111 § 181 and in *Jacobson* v. *Massachusetts,* 197 U.S. 11 (1905).

45. Plaintiff Cluett plays on defendant Boston's NCAA track team and is a recipient of the Chancellor's Merit Scholarship ($10,000 per year) and cannot practically transfer schools.

46. Additionally, all four-year public colleges and universities in Massachusetts

now mandate the COVID-19 vaccine[11].

47. Thus, plaintiffs are prevented from attending any other public college or university within the state without facing the same vaccination requirement.

## COUNT II
### (14th Amendment Substantive Due Process)

48. Plaintiffs repeat and reallege paragraphs 1-47 of this Complaint.

49. Plaintiffs have an individual, fundamental right to refuse medical treatment. *Washington* v. *Harper,* 494 U.S. 210 (1990). See also *Cruzan* v. *Director of Mississippi Department of Public Health*, 497 U.S. 261 (1990).

50. While there is significant precedent with respect to states mandating vaccinations in public health emergencies, primarily *Jacobson*, *supra*, not only has the Commonwealth not mandated the vaccine for students, but neither the Governor of Massachusetts, nor any local Board of Health has mandated the vaccines.

51. *Jacobson* does not apply to defendants' policies for the following reasons:

   a. The defendant has no statutory authority to order the vaccination of its students, and all immunization requirements are based upon the mandates of the Massachusetts Department of Public Health;

   b. Neither the Governor, nor any local Board of Health, have mandated the COVID-19 vaccines;

   c. The Supreme Court in *Jacobson* made its determination based

---

[11] https://www.wcvb.com/article/massachusetts-state-universities-mandate-covid-19-vaccine/36257924

significantly on the settled medical science regarding the smallpox vaccinations from "nearly a century" of its use, and in the instant case, we are dealing with three drugs that have been in existence less than one year and are not approved by the Food and Drug Administration;

d. At issue in *Jacobson* was the statute allowing the Board of Health to mandate vaccinations of its citizens. It did not give an individual university the authority to vaccinate its students; and

52. Strict scrutiny therefore applies to defendants' policy, requiring that their restrictions of plaintiffs' fundamental right must be narrowly tailored to serve a compelling state interest.

53. Restricting plaintiffs' fundamental right to refuse medical treatment in this instance was not narrowly tailored, nor does it serve a compelling interest.

54. The COVID-19 vaccines, in their short existence, have resulted in 11,940 vaccine-related deaths (https://www.openvaers.com/covid-data).

55. Among the ages of 12-24, which make up 8.8% of vaccines administered, we see a whopping 52.5% of *all* reported myocarditis and pericarditis cases[12].

56. As of February, 2021, the total amount of COVID-19 deaths of those under forty-four years old was 11,421, while those under twenty-five totaled only 3,710, with 16 total COVID-19 deaths in Massachusetts for individuals under 35 years old[13].

57. From 2020-2021, defendant Lowell has conducted 60,843 COVID-19 tests, of

---

[12] https://www.fda.gov/media/150054/download#page=17
[13] https://www.heritage.org/data-visualizations/public-health/covid-19-deaths-by-age/

which 245 were positive, a rate of 0.40%[14].

58. From August of 2020-2021, defendant Boston has conducted 20,742 COVID-19 tests, of which 149 were positive, a rate of 0.7%.

59. Since 2020, the defendant Boston has received $71,473,430 in state and federal COVID-19 related relief funds, including American Rescue Plan, CRRSAA, CARES Act, GEER and FEMA.

60. As part of the same programs, defendant Lowell has received over $52,000,000 in federal and state COVID-19 related relief funds[15].

61. Many of these funds received have vague guidelines with respect to use of the funds, such as training, public health centers, staffing and reimbursement of lost revenue[16].

62. Defendants, along with administering testing and vaccines on its campus, report COVID-19 data to the CDC, including specific demographic data[17].

63. Defendants also mandate certain prevention measures for those with exemptions to their mandate, including mask wearing, temperature checks and self-reporting.

64. These methods of prevention are purportedly effective in preventing the spread of COVID-19.

65. Defendants' policies, in light of the publicly available data, additional effective measures, fails to establish a rational relationship to a legitimate

---

[14] https://www.uml.edu/alert/coronavirus/returning/testing.aspx
[15] https://www.covidmoneytracker.org
[16] https://crsreports.congress.gov/product/pdf/IN/IN11556
[17] https://www.cdc.gov/coronavirus/2019-ncov/lab/reporting-lab-data.html

interest (preventing the spread of COVID-19).

## COUNT III
## (Denial of Religious Exemption as to Cluett)

66. Plaintiffs repeat and reallege paragraphs 1-65 of this Complaint.

67. Plaintiff Cluett has a sincerely held religious belief that precludes her from taking the mandated vaccine.

68. Defendants Boston and Suárez-Orozco offer to UMass Boston students a religious exemption to its vaccine requirement as part of school policy.

69. Plaintiff Cluett, in accordance with G.L. c. 76 § 15 and 105 C.M.R. 220.500, is entitled to be exempt from the vaccine mandate, if she states, "in writing that vaccination or immunization conflicts with [her] sincere religious beliefs."

70. Plaintiff Cluett, on May 18, 2021, submitted a religious exemption to defendant Boston, using the school's form, that the COVID-19 vaccine conflicted with her sincerely held religious belief.

71. On June 17th, defendant Boston (through a University Health Services message on the Beacon Health Portal) updated their requirements for obtaining a religious exemption, which prompted Cluett to send her first written religious exemption statement on June 23rd, 2021. She received an email later that same day stating that a committee would be convened to review her request.

72. On July 15, 2021, defendant Boston, through University Health Services, send a notification to Cluett that her religious exemption was not approved, directing her to send any appeals to defendant De Veau.

73. Cluett sent in a letter appealing her religious exemption on July 23, 2021.

74. On July 26, 2021, defendant Boston, through its interim Vice Chancellor Shawn De Veau, denied plaintiff Cluett's appeal on the basis that 1) Mr. DeVeau, acting on behalf of defendant Boston, deemed Cluett to be Roman Catholic, and 2) that, based on De Veau's research, the vaccine would not violate the tenets of the Catholic faith.

75. Defendant Suárez-Orozco was included in this electronic mail communication, was aware of the denial and did not prevent De Veau from denying Cluett's valid religious exemption.

76. In 1971, the Supreme Judicial Court found that basing religious exemption on those who subscribed to "tenets and practices of a recognized church or religious denomination was violative of First and Fourteenth Amendments of the United States Constitution and state constitutional provisions in extending preferred treatment to adherents and members of recognized church or religious denominations while denying exemption to others objecting to vaccination on religious grounds." *Dalli* v. *Board of Education*, 358 Mass. 753 (1971).

77. Defendants Boston, De Veau and Suárez-Orozco's denial of plaintiff Cluett's religious exemption is therefore violative of state law, along with her First and Fourteenth Amendment Rights under the United States Constitution, and her rights under Articles I and II of the Massachusetts Constitution.

78. Under the First Amendment of the United States Constitution, and in

accordance with 42 U.S.C. § 2000bb-1, defendants cannot burden Cluett's free exercise of her religion by forcing her to take a vaccine that she is forbidden from taking based on her religious beliefs or penalize her for not taking the vaccine.

## COUNT IV
### (Violations of 42 U.S.C. §1983)

79. Plaintiffs repeat and reallege paragraphs 1-78 of this Complaint.

80. Defendants, enacting their vaccine mandate, were and are acting under the color of law. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West* v. *Atkins*, 487 U.S. 42 (1988).

81. The deprivation of plaintiffs' liberty interest, outlined in Count I, above, constitutes a violation of § 1983.

82. The deprivation of plaintiffs' fundamental right to refuse medical treatment, outlined in Count II, above, constitutes a violation of § 1983.
The deprivation of plaintiff Cluett's First Amendment and G.L. c. 76 § 15 rights outlined in Counts III and IV, above constitute violations of § 1983.

## PRAYER FOR RELIEF

83. WHEREFORE, plaintiffs request:

84. Declaration that defendants' vaccination mandates are unconstitutional on its face;

85. Declaration that defendants' mandates are unconstitutional as applied to each respective plaintiff;

86. Enjoin defendants from enforcing their mandate;

87. Attorney fees and costs, plus any other relief this Court deems proper.

                    Plaintiffs, by their attorney,

                    /s/ Ryan P. McLane
                    Ryan P. McLane, Esq. (BBO: 697464)
                    McLane & McLane, LLC
                    269 South Westfield Street
                    Feeding Hills, MA 01030
                    Ph. (413) 789-7771
                    Fax (413) 789-7731
                    E-mail: ryan@mclanelaw.com

## VERIFICATION AND AFFIDAVIT

I, Hunter Harris, verify under the penalty of perjury that the foregoing is true and correct:

1. I am a resident of Massachusetts.

2. I verify that all of the facts contained within the Verified Complaint for Declaratory and Injunctive Relief are true to the best of my knowledge as they pertain to me.

3. I am an undergraduate student currently enrolled at the University of Massachusetts, Lowell.

4. I do not qualify for a medical or religious exemption.

5. UMass Lowell's policy, enforced by the Chancellor, will force my expulsion for refusing to receive one of three unapproved COVID-19 vaccines.

6.

Signed: _Hunter Harris_     Executed on: _7/29/21_, 2021

### COMMONWEALTH OF MASSACHUSETTS

Hampden, ss

On this _29th_ day of _July_ 2021, before me, the undersigned notary public, personally appeared Hunter Harris and proved to me through satisfactory evidence of identification, which was _MA Drivers license_, to be the person whose name is signed on the preceding or attached document, and who swore and affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief, and acknowledged to me that he signed it voluntarily for its stated purpose.

_Diann Lynn Ohann_
Notary Public:
My Commission Expires:

DIANN LYNN OHANNESIAN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
February 3, 2028

## VERIFICATION AND AFFIDAVIT

I, Cora Cluett, verify under the penalty of perjury that the foregoing is true and correct:

1. I am a resident of Massachusetts.
2. I verify that all of the facts contained within the Verified Complaint for Declaratory and Injunctive Relief are true to the best of my knowledge as they pertain to me.
3. I am an undergraduate student currently enrolled at the University of Massachusetts, Boston, where I also play on the NCAA track team for the university.
4. I qualify for a religious exemption.
5. My religious exemption was properly asserted under G.L. c. 76 § 15.
6. UMass Boston, through Shawn De Veau, denied my religious exemption
7. I now face expulsion if I do not take one of the three COVID-19 vaccines, which have been authorized for emergency use.

Signed: _____   Executed on: July 29, 2021

COMMONWEALTH OF MASSACHUSETTS

Hampden, ss

On this 29th day of July 2021, before me, the undersigned notary public, personally appeared Cora Cluett and proved to me through satisfactory evidence of identification, which was Driver's License, to be the person whose name is signed on the preceding or attached document, and who swore and affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Notary Public:
My Commission Expires:



WIN K. TUNG
Notary Public, Commonwealth of Massachusetts
My Commission Expires September 26, 2023