## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **HUNTER HARRIS and** ) | |
| **CORA CLUETT,** ) | |
| **Plaintiffs** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO.** |
| ) | |
| **UNIVERSITY OF MASSACHUSETTS** ) | |
| **LOWELL, JACQUELINE MOLONEY,** ) | |
| **UNIVERSITY OF MASSACHUSETTS** ) | |
| **BOSTON, MARCELO SUÁREZ-** ) | |
| **OROZCO and SHAWN DE VEAU** ) | |
| **Defendants** ) | |

## MEMORANDUM OF LAW
## IN SUPPORT OF PRELIMINARY INJUNCTION

ATTORNEY FOR PLAINTIFFS:

/s/ Ryan P. McLane
Ryan P. McLane, Esq. (Juris: 438176)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
Ph. (413) 789-7771
Fax (413) 789-7731
E-mail: ryan@mclanelaw.com

**ORAL ARGUMENT REQUESTED**

1

Plaintiffs, Hunter Harris and Cora Cluett, in accordance with Fed. R. Civ. P. 65, file this memorandum of law in support of their Motion for Preliminary Injunction.

## INTRODUCTION

Defendants have violated plaintiffs' procedural and substantive due process rights and other individual rights under the United States Constitution, along with violations of law regarding informed consent and civil rights violations under 42 U.S.C. § 1983, by implementing and enforcing almost identical mandates ("mandate") which require that their students be vaccinated against COVID-19 as a condition of their enrollment and/or attendance at both the University of Massachusetts Lowell and the University of Massachusetts Boston. These mandates are subject to medical and religious exemptions. Defendants Boston De Veau and Suarez- Orozco additionally denied plaintiff Cluett's valid and properly asserted religious exemption.

None of the available COVID-19 vaccines have been approved by the Food and Drug Administration, but rather authorized for emergency use under the Emergency Use Authorization statute, 21 U.S.C. § 360bbb-3. Defendants' policies will cause irreparable harm to the plaintiffs by any of the following:

1. through forcing them to take an unapproved drug that they do not wish to take; or

2. by subjecting them to expulsion; and

3.  with respect to plaintiff Cluett, either of the above and potentially a violation of her sincerely held religious beliefs and convictions if she were to take the vaccine.

**Plaintiffs are therefore seeking preliminary injunctive relief against the defendants' mandates, further asking the Court to ORDER that they withdraw the policies mandating vaccination of students with a drug that has not been approved by the FDA unless the student chooses to take the drug of their own choosing. Time is of the essence with this request, as the Fall semesters are scheduled to begin September 1, 2021 and September 8, 2021.**

## FACTS

Plaintiff Hunter Harris is enrolled as an undergraduate at the University of Massachusetts Lowell. Plaintiff Cora Cluett is an undergraduate, enrolled at the University of Massachusetts Boston, having obtained the Chancellor's Merit Scholarship of $10,000 where she also runs for their NCAA track team. The UMass Boston policy was announced on April 26, 2021, requiring all UMass Boston students to be vaccinated against COVID-19 in order to attend in-person class or be on campus[1]. (V. Compl., ECF 1, ¶14, p.3). The UMass Lowell policy was announced on April 28, 2021 with virtually identical language. (V. Compl., ECF 1, ¶10, p.2).

---

[1] https://www.umb.edu/news/detail/an_update_on_vaccinations_for_the_umass_boston_community

The policy makes clear that students face expulsion for failure to show proof that they have been vaccinated[2]. The UMass Lowell policy announcement stated:

> *"The university is making this decision based on widely anticipated additional state and federal public health guidelines in the coming months as well as ample vaccine availability at vaccination sites across Massachusetts and throughout the country.[3]"*

Neither of the defendants' policies are consistent with state and federal public health guidelines. Currently, there is no federal mandate for vaccination against COVID-19. Although many agencies, such as the Centers for Disease Control (CDC), Food and Drug Administration and even the White House are strongly encouraging the vaccine, these agencies have not issued a full mandate of the vaccine for their own employees[4]. The CDC has even published well-known guidelines for both vaccinated and unvaccinated individuals to prevent the spread of COVID-19, none of which encourages a vaccine mandate. (V. Compl., ECF 1, ¶30, p.7). The "Safer Federal Workforce," an agency comprised of several federal agencies and led in part by the White House, advise against mandating the COVID-19 vaccine for federal workers (See V. Compl., ECF 1, ¶26-27, p.6, table below). This has since been taken down, without any guidance affirming that federal workers could be forced to take a COVID-19 vaccine:

---

[2] https://www.uml.edu/alert/coronavirus/returning/covid-vaccine-faq.aspx
[3] https://www.uml.edu/alert/coronavirus/4-27-21-student-vaccine-requirement.aspx
[4] The Deparmtne of Veteran's Affairs has purportedly issued a mandate for select frontline healthcare workers. See: https://www.nytimes.com/2021/07/26/us/politics/veterans-affairs-coronavirus-covid-19.html

# Vaccinations

| NEW **Vaccination Status** | — |
|---|---|

**Q: Should agencies require employees to be vaccinated or inquire regarding their vaccination status?**

A: The Administration strongly encourages all Americans, including Federal employees and contractors, to be vaccinated. Employees should receive paid time off to be vaccinated and to deal with any side effects. At present, COVID-19 vaccination should generally not be a pre-condition for employees or contractors at executive departments and agencies (agencies) to work in-person in Federal buildings, on Federal lands, and in other settings as required by their job duties.

Federal employees and contractors may voluntarily share information about their vaccination status, but agencies should not require federal employees or contractors to disclose such information. Responding to agency inquiries should be voluntary, and agencies should comply with any applicable laws, including requirements under the Privacy Act and the Paperwork Reduction Act, and any applicable collective bargaining obligations. When an employee or contractor voluntarily discloses that they are unvaccinated or declines to provide vaccination information, agencies should use that information to implement CDC-recommended mitigation measures, including masking and physical distancing.

As stated in the complaint, rather than encourage mandating the vaccine, President Biden has initiated the "College Vaccine Challenge," in which defendant is an active participant, whereby colleges and universities are encouraged to create outreach programs to encourage maximum participation in campus vaccination. At no point were schools *ever* encouraged to mandate the vaccine.

The clear motive behind federal guidance "strongly encouraging," vaccination against COVID-19, while explicitly avoiding providing advice on mandating the available vaccines, is that the vaccines available are only authorized for distribution under 21 U.S.C. 360bbb-3, the Emergency Use Authorization statute. This

authorization does not confer FDA approval of the drug (Johnson and Johnson

clinical trials are set to conclude in September of 2023:

https://clinicaltrials.gov/ct2/show/NCT04505722?term=Janssen&cond=Covid19&cnt

ry=US&draw=2), but rather allows for direct distribution to the public in an effort

to combat a public health emergency. The statute specifically states that individuals

cannot be mandated to receive the vaccine. Specifically, the Health and Human

Services Secretary is, per the statute, to ensure that individuals to whom the

product is administered are informed "of the option to accept or refuse

administration of the product, of consequences, if any, of refusing administration of

the product, and of the alternatives to the product that are available and of their

benefits and risks." *Id.* The Executive Secretary of the CDC-ACIP stated that

vaccines "are not allowed to be mandatory" under an EUA. (V. Compl., ECF 1, ¶23,

pp. 4-5).

Federal agencies are generally not requiring their own employees be

vaccinated against COVID-19, save certain Department of Veteran's Affairs

healthcare workers, and prominent members of the CDC have specifically stated

that the vaccines should *not* be mandated. As stated in plaintiffs' Verified

Complaint, President Biden has stated that all federal workers should be

vaccinated or face regular testing. (V. Compl., ECF 1, ¶34, p. 8) In other words,

federal workers are, with the exception of healthcare workers at the VA, *not* being

mandated to take a COVID-19 vaccine.

As a matter of medical ethics, the mandate is unethical. Dr. Aaron Kheriarty and Professor Gerard Bradley (Notre Dame Law), drafted an opinion in the Wall Street Journal entitled entitled "*University Vaccine Mandates Violate Medical Ethics*," (June 14, 2021) https://www.wsj.com/articles/university-vaccine-mandates-violate-medical-ethics-11623689220?reflink=share_mobilewebshare, where they address the "safety of others" argument, stating that "a person may freely choose to accept medical risks for the benefit of others," and "those who make such sacrifices for others must truly be volunteers, not conscripts drafted by college administrators." In the article they address *Doe v. Rumsfeld,* D.D.C. 1:03-cv-00707 (2004), where District Court Judge Emmett Sullivan ruled that the Anthrax Vaccine, which had not been approved could not be administered to the members of the military without their consent, absent a statutory exception that includes a presidential waiver for members of the military. While *Rumsfeld* dealt with a military mandate, it is an influential opinion on the ethics of obtaining consent prior to administration of an unapproved drug.

All three of the available vaccines (Moderna, Pfizer and Johnson & Johnson), are required to provide fact sheets, publicly available to recipients of the vaccine. These fact sheets identify the health risks and benefits, along with the consequences of not taking the vaccine, in accordance with 21 U.S.C. § 360bbb-3. For example, the Moderna Fact Sheet states "It is your choice to receive or not receive the Moderna COVID-19 Vaccine. Should you decide not to receive it, it will

not change your standard medical care[5]." Pfizer[6] and Johnson & Johnson[7] Fact
Sheets also state that the recipient has the option to receive the vaccine.

As for the state guidelines, the Commonwealth of Massachusetts Department
of Public Health does not mandate that college students be immunized against
COVID-19[8]. Governor Baker is also opposed to the idea of mandating the vaccine for
public employees[9]. Lastly, no local Board of Health, as authorized by § 181, has
required and/or forced vaccinations of the residents of their town/city.

Not only are Massachusetts employees not mandated to be vaccinated
against COVID-19, *neither of the defendants' faculty are mandated either.* Mass.gov
outlines specific methods to reduce the spread of COVID-19, which includes
washing hands, mask wearing and physical distancing[10].

## Prevention

Many of the things you do to help prevent colds and the flu can help protect you against other
respiratory viruses, including COVID-19:

- **Wash your hands often** with soap and warm water for at least 20 seconds.
- **Avoid touching** your eyes, nose and mouth.
- **Clean things that are frequently touched** (like doorknobs and countertops) with household
  cleaning spray or wipes.
- **Cover your mouth** when you cough or sneeze. Use a tissue or your inner elbow, not your
  hands.
- **Stay home if you are sick** and avoid close contact with others.
- **Get vaccinated.**

---

[5] https://www.fda.gov/media/144638/download
[6] https://www.fda.gov/media/144414/download
[7] https://www.fda.gov/media/146305/download
[8] https://www.mass.gov/doc/immunization-requirements-for-school-entry-0/download
[9] https://www.boston.com/news/politics/2021/05/04/massachusetts-vaccine-mandate-public-employees/ quoting Governor Baker: "The idea that I would kick somebody out of a job — especially in a kind of economy we have now — because, quote unquote, they wouldn't get vaccinated right away on an [Emergency Use Authorization]-approved vaccine… No, I'm not gonna play that game."
[10] https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-12A.pdf

It can hardly be argued that defendant's policy is therefore consistent with state and federal public health guidance to minimize the spread of COVID-19, as there is no public health or legal guidance that these vaccines should be mandated (*actually* mandated, as opposed to incentivized), and further, there are significantly more ways to not only stop the spread of the disease, but treat the disease as well.

Defendants' mandates, with their assumed purpose being to promote the safety of its students by protecting against the COVID-19 virus, actually puts their student bodies at unnecessary risk. Dr. Andrew Bostom, MD, MS, compiled COVID-19 data from one hundred major universities within the United States through Thanksgiving break of 2020, included in a report he authored entitled "*Why Collegiate COVID-19 Vaccine Mandates Are Lysenkoist Anti-Science*[11]". Nationally during that period of time, out of 139,000 positive tests, 17 resulted in mostly short-term hospitalization, and 1 potential COVID-19 death. *Id.* Although neither UMass Boston nor UMass Lowell were on this list, UMass Amherst had 401 total reported cases with zero hospitalizations and zero deaths and Boston College had 302 reported cases with zero hospitalizations and zero deaths. This demonstrates that college-aged individuals have a low risk of infection and serious side-effects or death from COVID-19. In the data included in plaintiffs Verified Complaint, UMass Lowell had a 0.40% positive rate in over 60,843 cases and UMass Boston had a 0.7% positive rate out of 20,742 cases. (V. Compl. ECF 1, ¶57-58, p. 11). College students

---

[11] https://www.andrewbostom.org/wp-content/uploads/2021/06/Why-Collegiate-Covid-19-Vaccine-Mandates-Are-Lysenkoist.pdf

are also a limited factor in spreading the disease to their neighboring communities. Bostom, *Supra*.

With the lack of prevalence of COVID-19 from the student body and given the evidence that college students do not widely spread COVID-19 to the neighboring communities, the need for the mandating of vaccines as being an improvement upon UMass Boston and UMass Lowell's current safety measures (aside from masks, temperature checks, self-reporting and physical distancing) is non-existent. In fact, we are now seeing that those who have been vaccinated are still getting the disease[12].

Even with the argument that the vaccines are more effective at prevention of the spread of COVID-19, the dangers from the vaccines can be incredibly serious. As stated in plaintiffs' complaint, nearly 12,000 vaccine-related deaths have been reported on the Vaccine Adverse Event Reporting system since these vaccines were released to the public. (V. Compl. ECF 1, ¶54, pp. 11). The following CDC VAERS table (https://www.openvaers.com/covid-data/mortality) shows post-COVID vaccine deaths compared to prior years dating back to the year 1990:

---

[12] https://www.businessinsider.com/covid-after-vaccine-symptoms-to-expect-breakthrough-cases-2021-7

COVID Vaccine Data

Through June 11, 2021



Reported Deaths post COVID Vaccine: Total 5,993

Those of college age 12-24, who have received only 8.8% of all doses of the

vaccines, have resulted in 52.5% of all reported myocarditis and pericarditis cases[13].

## Preliminary myocarditis/pericarditis reports to VAERS following dose 2 mRNA vaccination, Exp. vs. Obs. (data thru May 31, 2021)

| Age groups | Doses admin | Crude reporting rate* | Expected†,‡ Myocarditis/ pericarditis cases | Observed† Myocarditis/ pericarditis reports |
|---|---|---|---|---|
| 12–15 yrs | 134,041 | 22.4 | 0–1 | 2 |
| 16–17 yrs | 2,258,932 | 35.0 | 2–19 | 79 |
| 18–24 yrs | 9,776,719 | 20.6 | 8–83 | 196 |
| 25–39 yrs | 26,844,601 | 5.0 | 23–228 | 124 |
| 40–49 yrs | 19,576,875 | 3.0 | 17–166 | 51 |
| 50–64 yrs | 36,951,538 | 1.3 | 31–314 | 39 |
| 65+ yrs | 42,124,078 | 0.9 | 36–358 | 26 |
| NR | — | — | — | 11 |

8.8% of doses admin

n=277 reports
52.5% of total reports

* Per million doses administered; † Assumes a 31-day post-vaccination observation window; 528 reports with symptom onset within 30 days of vaccination shown; ‡ Based on Gubernot et al. U.S. Population-Based background incidence rates of medical conditions for use in safety assessment of COVID-19 vaccines. Vaccine. 2021 May 14:S0264-410X(21)00578-8.

However, myocarditis and pericarditis are not the only risks to the students being

subjected to this mandate. "Four serious adverse events follow this arc, according to

---

[13] https://www.fda.gov/media/150054/download#page=17

data taken directly from Vaers: low platelets (thrombocytopenia); noninfectious myocarditis, or heart inflammation, ***especially for those under 30***; deep-vein thrombosis; and death. Vaers records 321 cases of myocarditis within five days of receiving a vaccination, falling to almost zero by 10 days. Prior research has shown that only a fraction of adverse events are reported, so the true number of cases is almost certainly higher. This tendency of underreporting is consistent with our clinical experience." "*Are Covid Vaccines Riskier Than Advertised?*" (June 22, 2021). https://www.wsj.com/articles/are-covid-vaccines-riskier-than-advertised-11624381749. The evidence of heart inflammation being connected to these vaccines has been addressed by the FDA through the issuance of a warning[14] and is further supported by a UMass Medical School study, as well. See "*UMass Medical School Cardiology Experts Report Link Between Mild Heart Problem. COVID Vaccine,*" (June 9, 2021). https://www.umassmed.edu/news/news-archives/2021/06/umass-medical-school-cardiology-experts-report-link-between-mild-heart-problem-covid-vaccine/?fbclid=IwAR2ZyiIXjI8FAgYz458cqfjHwXvQNO1GYingo31FqINIzHAU4dmiit9zHb4. These are just the adverse effects that experts are currently aware of. "For example, none of the current vaccines have passed fertility, teratogenicity, or mutagenicity testing, thus may be contraindicated in women of childbearing potential or those about to become pregnant." "*How College COVID Vaccine Mandates Put Students In Danger,*" (July 5, 2021). https://thefederalist.com/2021/07/05/how-college-covid-vaccine-mandates-put-

---

[14] https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-june-25-2021

students-in-danger/. Additionally, both universities' mandates preclude those who have had COVID-19 to refrain from taking the vaccine, despite between 90-99% of individuals who have recovered from the virus developing neutralizing antibodies to the disease[15]. Not only do those individuals develop antibodies, but they are at a greater risk of adverse effects from the vaccine. *"How College COVID Vaccine Mandates Put Students In Danger," Supra.*

Both university policies are unlawful and puts the plaintiffs and other students at an unnecessary risk.

## LEGAL STANDARD FOR PRELIMINARY INJUNCTION

The First Circuit utilizes a four-part framework to determine whether to grant preliminary injunctive relief: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Ross-Simons of Warwick, Inc.* v. *Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir. 1996).

## ARGUMENT

## AS TO THE VACCINE MANDATES

### I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CONSTITUTIONAL CLAIMS.

#### A. Defendants Lack Constitutional Authority to Enforce Their Vaccination Mandates

---

[15] https://www.medpagetoday.com/infectiousdisease/covid19/92836?xid=nl_secondopinion_2021-06-01&eun=g1301936d0r

The power to mandate vaccinations is provided to the local Boards of Health through the legislature. G. L. c. 111 § 181. The Department of Public Health, under G. L. c. 76 § 15, mandates immunization for those who attend schools within the Commonwealth, including for college, and the exemptions provided to those specified vaccines. See also, 105 C.M.R. 220.500. Defendants' nearly identical mandates, requiring the students to take a vaccine that have not been approved by the FDA, has not been mandated by the Department of Public Health, nor the local Boards of Health within the Commonwealth. The Governor has staunchly refused the idea of mandating the vaccine for state workers. Therefore, defendants' employment of these mandates exceeds their authority under state and federal law, as defendant's power does not supersede that of the Legislature, Governor and Public Health Commissioner. Plaintiff is highly likely to succeed on the merits that in that defendants do not have constitutional authority (nor authority as a matter of state law) to mandate the COVID-19 vaccines on its campus.

## B. Defendants' Mandates Violate the Plaintiffs' Procedural Due Process Rights

Plaintiffs hold a liberty interest in continuing their education at both UMass Schools. Goss v. *Lopez*, 419 S.Ct. 565 (1975). Defendants' policies force the plaintiffs to make a decision: take an unapproved vaccine or leave. There is nowhere for the plaintiffs to go with respect to public schooling in Massachusetts, as all of the other public colleges and universities within the Commonwealth quickly followed suit and mandated the vaccine for their own students. It is also far too late for students to re-apply and be accepted into a new school, either a more expensive private school,

or to travel to a neighboring state (many of whom are implementing their own

mandates).

### C. Defendants' Policies Fail Under Both Strict Scrutiny and Rational Basis Review as to their Substantive Due Process Violations

"No right is held more sacred, or is more carefully guarded by the common

law, than the right of every individual to the possession and control of his own

person, free from all restraint or interference of others, *unless by clear and*

*unquestionable authority of law. Union Pac. Ry. Co.* v. *Botsford,* 141 U.S. 250, 251

(1891). Every individual has a right to bodily autonomy, personal liberty and the

right to refuse medical treatment. "A competent person has a liberty interest under

the Due Process Clause in refusing unwanted medical treatment." *Cruzan* v.

*Director, Mississippi Department of Health*, 110 S.Ct. 2841 (1990). To determine

whether the plaintiffs' right has been violated, courts balance the liberty interest

against relevant state interests. *Id.*

As stated in plaintiffs' complaint, *Jacobson* v. *Commonwealth of*

*Massachusetts*, 197 U.S. 11 (1905), has been the go-to case with respect to

vaccination mandates during a pandemic. Plaintiffs distinguished the instant case

from Jacobson in their complaint by pointing out the following:

    i.    The Board of Health in *Jacobson* was actually given statutory authority

        to mandate vaccinations (essentially identical to G.L. c. 111 § 181), while

        the defendant here does not have that statutory authority;

    ii.    The Massachusetts Department of Public Health, has not exercised

        their authority to mandate the vaccine for college students; and

iii. The Supreme Court made their determination in *Jacobson* based on "well known" information regarding the smallpox vaccine's near century of use, whereas here we are dealing with a vaccine that has been in existence for less than a year and is not yet approved by the FDA.

It should also be noted that in *Roman Catholic Diocese of Brooklyn, New York* v. *Andrew Cuomo*, 141 S.Ct. 63 (2020), Justice Gorsuch, in his concurring opinion, referred to Jacobson, stated "Rational basis review is the test this Court *normally* applies to Fourteenth Amendment challenges, so long as they do not involve suspect classifications based on race or some other ground, or a claim of fundamental right. *Jacobsen* didn't seek to depart from normal legal rules during a pandemic and is supplies no precedent for doing so. Instead, *Jacobson* applied what would become the traditional legal test associated with the right at issue – exactly what the Court does today. Here, that means strict scrutiny – showing it has employed the most narrowly tailored means available to satisfy a compelling state interest."

The defendants, in employing their mandate, have not "employed the most narrowly tailored means available" to satisfy their interest interest, which can only be ensuring the safety of their students by preventing the spread of COVID-19. This is evident in their own policies for exemption, mandating those exempt individuals must use specific precautions, such as mask wearing, physical distancing and/or potential quarantine. Defendants also allows their own faculty and staff to remain on their respective campuses unvaccinated, presumably subject to the same alternative restrictions. While students are mandated, faculty and staff are "strongly

16

encouraged," and, because of the trouble of collective bargaining (at least for defendants Lowell and Moloney), the faculty and staff, who inevitably and regularly engage with students on campus, are free to carry on without the requirement of being vaccinated against COVID-19.  We had this disease before the vaccine. The defendants utilized various risk-mitigation measures that were presented as an effective means to control the spread of COVID-19 before the vaccine, and there is no evidence to suggest that the effectiveness of those mitigation measures is any less after the vaccines have been put into the marketplace, and indeed may be more effective if the vaccines are as effective as we are being told (with many students no doubt arriving on campus having received their vaccine).

Defendants' policies would also fail under the rational basis test, in that they bear no "rational relation to some independent legitimate legislative end," *Romer* v. *Evans*, 116 S.Ct. 1620 (1996). As stated before, their policies only require students to be vaccinated, but not the staff and faculty that interact with them on a daily basis. These policies then place students at an unnecessary risk. Further still, the students who do obtain an exemption are required to take separate but purportedly effective measures that make it safe for them to attend classes, no doubt the same measures that could be required for students who simply do not wish to take the vaccine. The entire policy is not rationally related to any legitimate purpose. Thus, on substantive due process grounds, the plaintiffs show a high likelihood of success on the merits, regardless of which test is being applied.

## II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THEIR INJUNCTION IS DENIED

Plaintiffs are subject to imminent and irreparable harm, which is clear: they will be forced to either take a vaccine that they neither want to, nor under federal and state law can they be mandated to take, or they will be forced to miss out on their education, which could include financial losses. Additionally, all public four-year colleges and universities in the Commonwealth have mandated these vaccines, leaving the plaintiffs without any public alternatives within Commonwealth. This harm will occur by September 1, 2021 and September 8, 2021. This injury "cannot adequately be compensated for either by later-issued permanent injunction, after full adjudication on the merits, or by later-issued damages remedy." and supports allowing preliminary injunctive relief. *Baer v. National Bd. Of Medical Examiners*, 392 F. Supp.2d 42 (D. Mass. 2005). Further, plaintiffs have already demonstrated a likelihood of success on the merits, which should then satisfy the irreparable harm prong of the preliminary injunction test. *Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F. 3d 1, 15 (1st Cir. 2012).

## III.    PLAINTIFFS HAVE SHOWN THAT THE BALANCE OF EQUITIES WEIGHS IN THEIR FAVOR

The defendants will suffer absolutely no loss if preliminary injunctive relief is awarded to plaintiffs. COVID-19 is not prevalent on either campus. It is incredibly unlikely that the very few students who have not received the vaccine nor qualified for an exemption will have any overall effect on the spread of the disease, should the same measures be implemented for them. The faculty and staff are already able

18

to carry on their business unvaccinated using the previous protection measures employed by defendants (as are those students with medical and religious exemptions). Defendants can therefore increase their attendance and revenue without any real additional risk, compared to the plaintiffs, who will lose their bodily autonomy, their liberty, their education, potentially finances and the ability to transfer to another school. Plaintiffs' losses vastly outweigh the defendants, tipping the balance in their favor to support preliminary injunctive relief.

## IV.    AN INJUNCTION IS IN THE PUBLIC INTEREST

Defendants policies, and other policies like it, should be stricken. The public's interest in informed consent and the adherence to state, federal and constitutional law is a strong one. Mandating a vaccine that has not been approved by the Food and Drug Administration is not the implementation of some "settled law" policy. At best, this has been a "grey area" when it comes to the law. As stated multiple times in plaintiffs' Verified Complaint, very few policymakers are entertaining the idea that these vaccines should be mandated.

Further, if plaintiffs had not filed suit, there would be no enforcement of the law against defendants. Allowing unlawful behavior to continue is *against* the public interest, therefore enforcing the laws is a strong public interest, which in this case justifies an injunction.

## AS TO CLUETT'S RELIGIOUS EXEMPTION

Cluett's claims over the denial of her religious exemption have an incredibly strong likelihood of success on the merits, as G.L. c. 76 § 15, the defendants' policy, 105 C.M.R 220.500 and *Dalli v. Board of Education*, 358 Mass. 753 (1971) all make clear that Cluett 1) has a right to assert a religious exemption to defendants Boston, Suárez-Orozco and De Veau's Mandate and 2) that defendant De Veau, with defendant Suárez-Orozco's knowledge, was clearly in error when he denied her exemption based on criteria that violates state and constitutional law.

The harm that Cluett would suffer is the same as listed above, but also includes either being forced to take a vaccine that would violate her religious beliefs and that she could lose out on her education, liberty and bodily autonomy over being denied the right to exercise her religious beliefs as protected by state law and the constitution.

Defendants would suffer no harm in exempting one additional student (Cluett) with a valid religious exemption, whereas Cluett would suffer and continue to suffer the aforementioned harm outlined in the prior analysis.

Lastly, the public has an interest in ensuring that the free exercise of religion is not being prevented on its colleges and universities, along with the interests outlined in the prior analysis.

## CONCLUSION

Plaintiffs have far exceeded the standard in demonstrating the need for preliminary injunctive relief. They have a high likelihood of success on the merits of their

claims, plus significant, immediate irreparable harm as compared to the lack of

harm (and arguably the benefit) that would be suffered by the defendants if the

injunction were to be awarded, and the injunction is in the public's interest.

Therefore, plaintiffs request that this Court ALLOW their motion and grant them

preliminary injunctive relief.


Plaintiffs, by their attorney,


  /s/ Ryan P. McLane
Ryan P. McLane, Esq. (BBO: 697464)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
Ph. (413) 789-7771
Fax (413) 789-7731
E-mail: ryan@mclanelaw.com


## CERTIFICATE OF SERVICE AND COMPLIANCE

I certify that on this 30th day of July 2021, I caused the foregoing to be served in this matter by electronic mail to:

**Gerry Leone, Esq.**
General Counsel for UMass
One Beacon Street, 31st Floor
Boston, MA 02108
gleone@umassp.edu


  /s/ Ryan P. McLane
Ryan P. McLane, Esq. (BBO: 697464)